# GILMORE *v.* TAYLOR

No. 91–1738. Argued March 2, 1993—Decided June 7, 1993

*Mark E. Wilson,* Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the briefs were *Roland W. Burris,* Attorney General, *Rosalyn B.*

*Kaplan,* Solicitor General, and *Terence M. Madsen, Marcia L. Friedl,* and *Steven J. Zick,* Assistant Attorneys General.

*Lawrence C. Marshall,* by appointment of the Court, 506 U. S. 1018, argued the cause for respondent. With him on the brief were *Roy T. Englert, Jr., Robert Agostinelli,* and *Timothy P. O'Neill.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.†

Respondent Kevin Taylor was convicted of murder by an Illinois jury and sentenced to 35 years' imprisonment. After his conviction and sentence became final, he sought federal habeas relief on the ground that the jury instructions given at his trial violated the Fourteenth Amendment's Due Process Clause. The Court of Appeals for the Seventh Circuit granted relief on the basis of its recent decision in *Falconer* v. *Lane,* 905 F. 2d 1129 (1990), which held that the Illinois pattern jury instructions on murder and voluntary manslaughter were unconstitutional because they allowed a jury to return a murder verdict without considering whether the defendant possessed a mental state that would support a voluntary-manslaughter verdict instead. We conclude that the rule announced in *Falconer* was not dictated by prior precedent and is therefore "new" within the meaning of *Teague* v. *Lane,* 489 U. S. 288 (1989). Accordingly, the *Falconer* rule may not provide the basis for federal habeas relief in respondent's case.

Early one morning in September 1985, respondent became involved in a dispute with his former wife and her live-in

---

*Kent S. Scheidegger* and *Charles L. Hobson* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union et al. by *Larry W. Yackle, Steven R. Shapiro, Leslie A. Harris, John A. Powell,* and *Harvey Grossman;* and for Nicholas deB. Katzenbach et al. by *George N. Leighton* and *George H. Kendall.*

†JUSTICE SOUTER joins all but footnote 3 of this opinion.

boyfriend, Scott Siniscalchi, over custodial arrangements for his daughter. A fracas ensued between the three adults, during which respondent stabbed Siniscalchi seven times with a hunting knife. Siniscalchi died from these wounds, and respondent was arrested at his home later that morning.

Respondent was charged with murder. Ill. Rev. Stat., ch. 38, ¶ 9–1 (1985). At trial, he took the stand and admitted killing Siniscalchi, but claimed he was acting under a sudden and intense passion provoked by Siniscalchi, and was therefore only guilty of the lesser included offense of voluntary manslaughter. ¶ 9–2. At the close of all the evidence, the trial judge found that there was sufficient evidence supporting respondent's "heat of passion" defense to require an instruction on voluntary manslaughter, and instructed the jury as follows:

"To sustain the charge of murder, the State must prove the following propositions:

"First: That the Defendant performed the acts which caused the death of Scott Siniscalchi; and

"Second: That when the Defendant did so he intended to kill or do great bodily harm to Scott Siniscalchi; or he knew that his act would cause death or great bodily harm to Scott Siniscalchi; or he knew that his acts created a strong probability of death or great bodily harm to Scott Siniscalchi; or he was committing the offense of home invasion.

"If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the Defendant guilty.

"If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the Defendant not guilty.

"To sustain the charge of voluntary manslaughter, the evidence must prove the following propositions:

"First: That the Defendant performed the acts which caused the death of Scott Siniscalchi; and

"Second: That when the Defendant did so he intended to kill or do great bodily harm to Scott Siniscalchi; or he knew that such acts would *[sic]* death or great bodily harm to Scott Siniscalchi; or he knew that such acts created a strong probability of death or great bodily harm to Scott Siniscalchi;

"Third: That when the Defendant did so he acted under a sudden and intense passion, resulting from serious provocation by another.

"If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the Defendant guilty.

"If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the Defendant not guilty.

"As stated previously, the Defendant is charged with committing the offense of murder and voluntary manslaughter. If you find the Defendant guilty, you must find him guilty of either offense; but not both. On the other hand, if you find the Defendant not guilty, you can find him not guilty on either or both offenses." App. 128–131.

These instructions were modeled after, and virtually identical to, the Illinois pattern jury instructions on murder and voluntary manslaughter, which were formally adopted in 1981, Illinois Pattern Jury Instructions—Criminal §§ 7.02 and 7.04 (2d ed. 1981), but on which Illinois judges had relied since 1961, when the State enacted the definitions of murder and voluntary manslaughter that governed until 1987. See Haddad, Allocation of Burdens in Murder-Voluntary Man-

slaughter Cases: An Affirmative Defense Approach, 59 Chi.-
Kent L. Rev. 23 (1982).[1] Respondent did not object to the
instructions. The jury returned a guilty verdict on the mur-
der charge, and respondent was sentenced to 35 years'
imprisonment.

Respondent unsuccessfully challenged his conviction on
appeal, then filed a petition for state postconviction relief.
The Circuit Court dismissed the petition. But while re-
spondent's appeal was pending, the Illinois Supreme Court
invalidated the Illinois pattern jury instructions on murder
and voluntary manslaughter. *People* v. *Reddick*, 123 Ill. 2d
184, 526 N. E. 2d 141 (1988). According to the Supreme
Court, under Illinois law, the instructions should have placed
on the prosecution the burden of *disproving* beyond a rea-
sonable doubt that the defendant possessed a mitigating
mental state. *Id.*, at 197, 526 N. E. 2d, at 146. Respondent
sought to take advantage of *Reddick* on appeal, but the
Court of Appeals affirmed the denial of postconviction relief
on the ground that *Reddick* did not involve constitutional
error, the only type of error that would support the grant of
relief. *People* v. *Taylor*, 181 Ill. App. 3d 538, 536 N. E. 2d
1312 (1989). The Illinois Supreme Court denied respond-
ent's request for leave to appeal.

Having exhausted his state remedies, respondent sought
federal habeas relief, attacking his conviction on the ground
that the jury instructions given at his trial violated due proc-
ess. Eleven days later, the Court of Appeals for the Sev-
enth Circuit held as much in *Falconer* v. *Lane*, 905 F. 2d 1129
(1990). The defect identified by the *Falconer* court was
quite different from that identified in *Reddick:* Because the

---

[1] Effective July 1, 1987, the offense of voluntary manslaughter was re-
classified as second-degree murder and the burden of proof as to the exist-
ence of a mitigating mental state was expressly placed on the defendant.
Ill. Rev. Stat., ch. 38, ¶ 9–2 (1987). The Illinois pattern jury instructions
were rewritten accordingly. 1 Illinois Pattern Jury Instructions—Crimi-
nal § 7.02B (3d ed. 1992, Supp. 1993).

murder instructions preceded the voluntary-manslaughter instructions, but did not expressly direct the jury that it could not return a murder conviction if it found that the defendant possessed a mitigating mental state, it was possible for a jury to find that a defendant was guilty of murder without even considering whether he was entitled to a voluntary-manslaughter conviction instead. 905 F. 2d, at 1136. "Explicit misdirection on this scale," the Seventh Circuit held, "violates the constitutional guarantee of due process." *Id.*, at 1137. In reaching this conclusion, the Court of Appeals placed principal reliance on *Cupp* v. *Naughten,* 414 U. S. 141 (1973).

At respondent's federal habeas proceeding, the State conceded that the jury instructions given at respondent's trial were unconstitutional under *Falconer,* but argued that the rule announced in *Falconer* was "new" within the meaning of *Teague* v. *Lane,* 489 U. S. 288 (1989), and therefore could not form the basis for federal habeas relief. The District Court agreed, but the Court of Appeals reversed. 954 F. 2d 441 (1992). Although the Seventh Circuit now thought *Cupp* was "too general to have compelled *Falconer* within the meaning of *Teague,*" 954 F. 2d, at 452, it concluded that *Boyde* v. *California,* 494 U. S. 370 (1990), and *Connecticut* v. *Johnson,* 460 U. S. 73 (1983) (plurality opinion), were "specific enough to have compelled" the result reached in *Falconer,* 954 F. 2d, at 453. Accordingly, the Court of Appeals held that the rule announced in *Falconer* was not "new" within the meaning of *Teague,* and that *Teague* therefore did not bar the retroactive application of *Falconer* in respondent's case. *Id.,* at 453. We granted certiorari, 506 U. S. 814 (1992), and now reverse.

The retroactivity of *Falconer* under *Teague* and its progeny is the only question before us in this case. Subject to two narrow exceptions, a case that is decided after a defendant's conviction and sentence become final may not provide

the basis for federal habeas relief if it announces a "new rule." *Graham* v. *Collins*, 506 U. S. 461, 466–467 (1993); *Stringer* v. *Black*, 503 U. S. 222, 227 (1992); *Teague, supra,* at 305–311 (plurality opinion). Though we have offered various formulations of what constitutes a new rule, put "meaningfully for the majority of cases, a decision announces a new rule ' "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." ' " *Butler* v. *McKellar*, 494 U. S. 407, 412 (1990) (quoting *Penry* v. *Lynaugh*, 492 U. S. 302, 314 (1989), in turn quoting *Teague, supra,* at 301 (emphasis in original)); see also *Graham, supra,* at 467; *Sawyer* v. *Smith*, 497 U. S. 227, 234 (1990); *Saffle* v. *Parks*, 494 U. S. 484, 488 (1990); *Penry* v. *Lynaugh*, 492 U. S. 302, 329 (1989). "The 'new rule' principle . . . validates reasonable, good-faith interpretations of existing precedents made by state courts," 494 U. S., at 414, and thus effectuates the States' interest in the finality of criminal convictions and fosters comity between federal and state courts.

We begin our analysis with the actual flaw found by the *Falconer* court in the challenged jury instructions. It was not that they somehow lessened the State's burden of proof below that constitutionally required by cases such as *In re Winship*, 397 U. S. 358 (1970); nor was it that the instructions affirmatively misstated applicable state law. (The Court of Appeals in no way relied upon *People* v. *Reddick, supra,* which the Illinois Supreme Court had subsequently held was subject to prospective application only. *People* v. *Flowers*, 138 Ill. 2d 218, 561 N. E. 2d 674 (1990).) Rather, the flaw identified by the *Falconer* court was that when the jury instructions were read consecutively, with the elements of murder set forth before the elements of voluntary manslaughter, a juror could conclude that the defendant was guilty of murder after applying the elements of that offense without continuing on to decide whether the elements of voluntary manslaughter were also made out, so as to justify returning a verdict on that lesser offense instead.

In concluding that this defect violated due process, the *Falconer* court relied on *Cupp* v. *Naughten, supra.* That case involved a due process challenge to a jury instruction that witnesses are presumed to tell the truth, which the defendant claimed had the effect of shifting the burden of proof on his innocence. Because the jury had been explicitly instructed on the defendant's presumption of innocence as well as the State's burden of proving guilt beyond a reasonable doubt, we held that the instruction did not amount to a constitutional violation. See 414 U. S., at 149.

We think *Cupp* is an unlikely progenitor of the rule announced in *Falconer*, a view now shared by the Seventh Circuit. The cases following *Cupp* in the *Winship* line establish that States must prove guilt beyond a reasonable doubt with respect to every element of the offense charged, but that they may place on defendants the burden of proving affirmative defenses. See *Martin* v. *Ohio*, 480 U. S. 228 (1987); *Patterson* v. *New York*, 432 U. S. 197 (1977). The State argues that these later cases support the proposition that any error committed in instructing a jury with respect to an affirmative defense, which does not lessen the State's *Winship* burden in proving every element of the offense charged beyond a reasonable doubt, is one wholly of state law. Cf. *Engle* v. *Isaac*, 456 U. S. 107, 119–121, and n. 21 (1982) (challenge to correctness of self-defense instructions under state law provides no basis for federal habeas relief). We need not address this contention other than to say that cases like *Patterson* and *Martin* make it crystal clear that *Cupp* does not compel the result reached in *Falconer*.

In its decision in the present case, the Court of Appeals offered two additional cases which it believed *did* dictate the result in *Falconer*. The first is *Boyde* v. *California, supra.* There, we clarified the standard for reviewing on federal habeas a claim that ambiguous jury instructions impermissibly restricted the jury's consideration of "constitutionally relevant evidence." 494 U. S., at 380. Although *Boyde* was de-

cided after respondent's conviction and sentence became final, it did not work a change in the law favoring criminal defendants, and therefore may be considered in our *Teague* analysis. See *Lockhart* v. *Fretwell*, 506 U. S. 364, 373 (1993). Nevertheless, *Boyde* was a capital case, with respect to which we have held that the Eighth Amendment requires a greater degree of accuracy and factfinding than would be true in a noncapital case. See *Herrera* v. *Collins*, 506 U. S. 390, 399 (1993); *Beck* v. *Alabama*, 447 U. S. 625 (1980). Outside of the capital context, we have never said that the possibility of a jury misapplying state law gives rise to federal constitutional error. To the contrary, we have held that instructions that contain errors of state law may not form the basis for federal habeas relief. *Estelle* v. *McGuire*, 502 U. S. 62 (1991).

Moreover, under the standard fashioned in *Boyde*, the relevant inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." 494 U. S., at 380. In *Boyde*, the petitioner argued that the trial court's instruction on California's "catch-all" factor for determining whether a defendant should be sentenced to death restricted the jury's consideration of certain mitigating evidence. Since "[t]he Eighth Amendment requires that the jury be able to consider and give effect to all relevant mitigating evidence," *id.*, at 377–378, this evidence was plainly constitutionally relevant. In this case, by contrast, petitioner argues that the challenged instructions prevented the jury from considering evidence of his affirmative defense. But in a noncapital case such as this there is no counterpart to the Eighth Amendment's doctrine of "constitutionally relevant evidence" in capital cases.

The Court of Appeals also relied on the plurality opinion in *Connecticut* v. *Johnson*, 460 U. S. 73 (1983). That case dealt with the question whether an instruction that violates due process under *Sandstrom* v. *Montana*, 442 U. S. 510

(1979), may be subject to harmless-error analysis. But in the course of deciding this question, the plurality discussed the nature of *Sandstrom* error, and it is this discussion on which the Court of Appeals relied below. *Sandstrom* is a lineal descendant of *Winship;* it simply held that an instruction which creates a presumption of fact violates due process if it relieves the State of its burden of proving all of the elements of the offense charged beyond a reasonable doubt. The Court of Appeals read the *Johnson* plurality's discussion of *Sandstrom* as establishing the "due process principle" that instructions are unconstitutional if they lead "the jury to ignore *exculpatory evidence* in finding the defendant guilty of murder beyond a reasonable doubt." 954 F. 2d, at 453 (emphasis added). But neither *Sandstrom* nor *Johnson* can be stretched that far beyond *Winship.* The most that can be said of the instructions given at respondent's trial is that they created a risk that the jury would fail to consider evidence that related to an affirmative defense, with respect to which *Winship*'s due process guarantee does not apply. See *Martin* v. *Ohio, supra; Patterson* v. *New York, supra.*

Respondent offers a separate (but related) rationale he claims is supported by our cases and also compels the Seventh Circuit's ruling in *Falconer:* viz., the jury instructions given at his trial interfered with his fundamental right to present a defense. We have previously stated that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane* v. *Kentucky,* 476 U. S. 683, 690 (1986) (quoting *California* v. *Trombetta,* 467 U. S. 479, 485 (1984)). But the cases in which we have invoked this principle dealt with the exclusion of evidence, see, *e. g., Crane* v. *Kentucky, supra; Chambers* v. *Mississippi,* 410 U. S. 284 (1973), or the testimony of defense witnesses, see, *e. g., Webb* v. *Texas,* 409 U. S. 95 (1972) *(per curiam); Washington* v. *Texas,* 388 U. S. 14 (1967). None of them involved restrictions imposed on a defendant's ability to present an affirmative defense. Drawing on these cases,

respondent argues that the right to present a defense includes the right to have the jury consider it, and that confusing instructions on state law which prevent a jury from considering an affirmative defense therefore violate due process.[2] But such an expansive reading of our cases would make a nullity of the rule reaffirmed in *Estelle* v. *McGuire, supra,* that instructional errors of state law generally may not form the basis for federal habeas relief. And the level of generality at which respondent invokes this line of cases is far too great to provide any meaningful guidance for purposes of our *Teague* inquiry. See *Saffle* v. *Parks,* 494 U. S., at 491.

For the foregoing reasons, we disagree with the Seventh Circuit and respondent that our precedent foreordained the result in *Falconer,* and therefore hold that the rule announced in *Falconer* is "new" within the meaning of *Teague.*[3]

---

[2] Respondent also relies on *Cool* v. *United States,* 409 U. S. 100 (1972) *(per curiam).* That case involved a due process challenge to an instruction that the jury should disregard defense testimony unless it believed beyond a reasonable doubt that the testimony was true. Relying on *In re Winship,* 397 U. S. 358 (1970), and *Washington* v. *Texas,* 388 U. S. 14 (1967), we held that this instruction required reversal of the defendant's conviction because it "place[d] an improper burden on the defense and allow[ed] the jury to convict despite its failure to find guilt beyond a reasonable doubt." 409 U. S., at 102–103. This, in turn, we emphasized, contravened *Winship*'s command that the State must prove guilt beyond a reasonable doubt. 409 U. S., at 104. *Cool* is a progeny of *Winship,* and therefore provides no predicate under *Teague* for the rule announced in *Falconer.*

[3] Strongly fortifying this conclusion is the fact that the instructions deemed unconstitutional in *Falconer* were modeled after, and virtually identical to, the Illinois pattern jury instructions on murder and voluntary manslaughter, which were formally adopted in 1981—five years before respondent's trial—but on which Illinois judges had relied since 1961. As we have stated, the purpose of *Teague*'s "new rule" principle is to "validat[e] reasonable, good-faith interpretations of existing precedents made by state courts." *Butler* v. *McKellar,* 494 U. S. 407, 414 (1990). The existence of such an institutionalized state practice over a period of years is

All that remains to be decided is whether this rule falls into one of *Teague*'s exceptions, under which a new rule may be given retroactive effect on collateral review. The first exception applies to those rules that "plac[e] certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Teague* v. *Lane*, 489 U. S., at 307 (plurality opinion) (internal quotation marks omitted). This exception is clearly inapplicable here, since the rule announced in *Falconer* does not "decriminalize" any class of conduct. See *Saffle* v. *Parks, supra,* at 495. *Teague*'s second exception permits the retroactive application of "'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." 494 U. S., at 495 (quoting *Teague, supra,* at 311). This exception is also inapplicable. Although the *Falconer* court expressed concern that the jury might have been confused by the instructions in question, we cannot say that its holding falls into that "small core of rules requiring 'observance of those procedures that . . . are implicit in the concept of ordered liberty.'" *Graham* v. *Collins,* 506 U. S., at 478 (quoting *Teague, supra,* at 311 (internal quotation marks omitted)).[4]

Because the rule announced in *Falconer* is "new" within the meaning of *Teague* and does not fall into one of *Teague*'s exceptions, it cannot provide the basis for federal habeas

---

strong evidence of the reasonableness of the interpretations given existing precedent by state courts.

[4] JUSTICE BLACKMUN in dissent would elevate the instructional defect contained in the Illinois pattern jury instructions on murder and voluntary manslaughter not merely to the level of a federal constitutional violation, but to one that is so fundamental as to come within *Teague*'s second exception. He reaches this result by combining several different constitutional principles—the prohibition against *ex post facto* laws, the right to a fair trial, and the right to remain silent—into an unrecognizable constitutional stew.

relief in respondent's case. The judgment of the Court of Appeals is therefore

*Reversed.*

JUSTICE O'CONNOR, with whom JUSTICE WHITE joins, concurring in the judgment.

Kevin Taylor admitted that he had killed Scott Siniscalchi. He contended, however, that he had "act[ed] under a sudden and intense passion resulting from serious provocation by [Siniscalchi]." Ill. Rev. Stat., ch. 38, ¶ 9–2 (1985). If Taylor's account is to be believed, then, under the law of the State of Illinois, he is not guilty of murder but rather of manslaughter. *Ibid.* At trial, Taylor took the stand and admitted to the two elements of murder. He asked only that the jury consider his state of mind when he acted and convict him of voluntary manslaughter, acquitting him of murder. Illinois law is clear that this put the jury to a choice: Taylor could be convicted only of manslaughter or murder—not of both. Indeed, because Taylor produced sufficient evidence to raise the defense of sudden passion, Illinois law required the State to negate Taylor's defense beyond a reasonable doubt. *People* v. *Reddick*, 123 Ill. 2d 184, 197, 526 N. E. 2d 141, 146 (1988). As a result, the jury should not have been permitted to convict Taylor of murder if there was so much as a reasonable possibility that Taylor's manslaughter defense had merit. *Ibid.*

In *Falconer* v. *Lane*, 905 F. 2d 1129 (1990), the Court of Appeals for the Seventh Circuit held that instructions similar to those given at Taylor's trial did not comport with Illinois law and were ambiguous at best. In Taylor's case, according to the Court of Appeals, this ambiguity resulted in a reasonable likelihood that the jury misunderstood those instructions, and that once it found Taylor guilty of the two elements of murder (to which Taylor had admitted), the jury simply stopped deliberating without considering the possibility that Taylor was guilty only of manslaughter. 954 F. 2d

441, 442 (1992). In other words, the court concluded that there was a reasonable likelihood that the jury never considered Taylor's defense of sudden and provoked passion, even though the trial court thought there was sufficient evidence of the defense for the issue to reach the jury and even though the State bore the burden of proving its absence beyond a reasonable doubt. This, the court held, violated due process. *Id.*, at 450.

The Court of Appeals, however, understood that our decision in *Teague* v. *Lane,* 489 U. S. 288 (1989) (plurality opinion), bars the announcement of new rules on habeas corpus. 954 F. 2d, at 451. Accordingly, it examined our precedents to determine whether its decision was "dictated" by our prior decisions. In so doing, the court construed our cases in *Boyde* v. *California,* 494 U. S. 370 (1990), and *Connecticut* v. *Johnson,* 460 U. S. 73 (1983) (plurality opinion), as compelling its conclusion that the instructions used in Taylor's case violated due process. 954 F. 2d, at 452–453. It therefore held that its rule was not "new" and ordered that a writ of habeas corpus issue unless Taylor was retried within 120 days. *Id.*, at 453.

I agree with the majority today that the rule the Court of Appeals announced was at least susceptible to debate among reasonable jurists. See *Butler* v. *McKellar,* 494 U. S. 407, 415 (1990). For that reason, I agree that under *Teague* a federal court cannot issue a writ of habeas corpus based on the ambiguous instructions in dispute here. In so deciding, however, I would not reach out to decide the merits of the rule, nor would I construe our cases so narrowly as the Court does. For that reason, I write separately.

Prior to *Boyde,* we phrased the standard for reviewing jury instructions in a variety of ways, not all of which were consistent. Compare *Mills* v. *Maryland,* 486 U. S. 367, 384 (1988) (constitutional error occurs when there is a "substantial probability" the instructions precluded consideration of constitutionally relevant evidence), with *Sandstrom* v. *Mon-*

*tana,* 442 U. S. 510, 523 (1979) (constitutional error occurs when jurors "could reasonably have concluded" that the instructions created a presumption of guilt on an element of the crime). In *Boyde,* we clarified that when the claim is that a single jury "instruction is ambiguous and therefore subject to an erroneous interpretation," the proper inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." 494 U. S., at 380. As the Court notes, we chose the more restrictive standard in that case, and, as a result, *Boyde* itself did not state a new rule. The Court, however, finds *Boyde* inapplicable because it was a capital case. *Ante,* at 342.

It is true that we clarified the standard for reviewing jury instructions in a capital case, but *Boyde* did not purport to limit application of that standard to capital cases, nor have we so limited it. In *Estelle* v. *McGuire,* 502 U. S. 62 (1991), for example, the Court reviewed an ambiguous state-law instruction in a noncapital case. Although I disagreed with the Court's conclusion regarding the effect of that ambiguous instruction, see *id.,* at 76–80 (O'CONNOR, J., concurring in part and dissenting in part), I agreed with the standard it used in reaching its conclusion: "'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id.,* at 72 (quoting *Boyde* v. *California, supra*). It is clear that the "reasonable likelihood" standard of *Boyde* applies to noncapital cases.

Although the Court's opinion today might be read as implying that erroneous jury instructions may never give rise to constitutional error outside of capital cases, *ante,* at 342, such an implication would misconstrue our precedent. When the Court states that "instructions that contain errors of state law may not form the basis for federal habeas relief," *ibid.* (citing *Estelle* v. *McGuire, supra*), it must mean that a mere error of state law, one that does not rise to the level of

a constitutional violation, may not be corrected on federal habeas. Some erroneous state-law instructions, however, may violate due process and hence form the basis for relief, even in a noncapital case. In *McGuire*, a majority of the Court found that the particular erroneous instruction at issue did not give rise to a constitutional violation, but the very fact that the Court scrutinized the instruction belies any assertion that erroneous instructions can violate due process only in capital cases.

We have not held that the Eighth Amendment's requirement that the jury be allowed to consider and give effect to all relevant mitigating evidence in capital cases, see, *e. g.*, *Boyde, supra*, applies to noncapital cases. Nevertheless, we have held that other constitutional amendments create "constitutionally relevant evidence" that the jury must be able to consider. See, *e. g.*, *Rock* v. *Arkansas*, 483 U. S. 44, 51 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution"); *Delaware* v. *Van Arsdall*, 475 U. S. 673, 678–679 (1986) (REHNQUIST, J.) ("[T]he Confrontation Clause guarantees an *opportunity* for effective cross-examination" (internal quotation marks omitted)). The category of "constitutionally relevant evidence" is not limited to capital cases.

In this case, the question is not whether application of the "reasonable likelihood" standard of *Boyde* is a new rule. It is not. See *ante*, at 341–342; *supra*, at 348. Nor is the question whether jury instructions may be so erroneous under state law as to rise to the level of a constitutional violation. It is clear to me that they may. See, *e. g.*, *McGuire*, 502 U. S., at 72; *id.*, at 78 (O'CONNOR, J., concurring in part and dissenting in part). The question is whether reasonable jurists could disagree over whether the particular erroneous instruction at issue here—which we assume created a reasonable likelihood that the jury did not consider Taylor's affirmative defense once it determined the two elements of murder were established—violated the Constitution.

Our cases do not provide a clear answer to that question. Due process, of course, requires that the State prove every element of a criminal offense beyond a reasonable doubt. *In re Winship,* 397 U. S. 358 (1970). This straightforward proposition has spawned a number of corollary rules, among them the rule that the State may not "us[e] evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis* v. *Franklin,* 471 U. S. 307, 313 (1985). Accord, *Rose* v. *Clark,* 478 U. S. 570, 580 (1986); *Connecticut* v. *Johnson,* 460 U. S., at 84–85 (plurality opinion); *Sandstrom, supra,* at 521–523. The Court of Appeals extended these cases—which themselves are the "logical extension" of *Winship,* see *Rose, supra,* at 580—one step further. It read them as standing for the proposition that any instruction that leads "the jury to ignore exculpatory evidence in finding the defendant guilty of murder beyond a reasonable doubt" violates due process; it disregarded as meaningless the distinction between elements of the offense and affirmative defenses. 954 F. 2d, at 453.

Our opinions in *Martin* v. *Ohio,* 480 U. S. 228 (1987), and *Patterson* v. *New York,* 432 U. S. 197 (1977), however, make clear that at least in some circumstances the distinction is not meaningless. In *Patterson,* we held that the Due Process Clause did not require the State to prove the absence of the affirmative defense of extreme emotional disturbance beyond a reasonable doubt; the State instead could place the burden of proving the defense on the defendant. *Id.,* at 210. We reaffirmed this holding in *Martin, supra,* and rejected petitioner's claim that requiring her to prove self-defense by a preponderance of the evidence shifted to petitioner the burden of disproving the elements of the crime. *Id.,* at 233–234. (Although *Martin* was decided after Taylor's conviction became final, its holding, like *Boyde's,* was not a new rule.)

This case differs from *Martin* and *Patterson* in at least two ways. First, Taylor had only the burden of production and not the burden of persuasion; once he produced sufficient evidence for the issue to go to the jury, the State was required to prove the absence of his defense beyond a reasonable doubt. See *Reddick*, 123 Ill. 2d, at 197, 526 N. E. 2d, at 146. Second, Taylor's contention does not concern the allocation of burdens of proof; he argues that the jury did not consider his defense at all. Nevertheless, I cannot say that our prior cases *compel* the rule articulated by the Court of Appeals. At the very least, *Martin* and *Patterson* confirm that the rule the Court of Appeals promulgated here goes beyond what we hitherto have said the Constitution requires.

The purpose of *Teague* is to promote the finality of state-court judgments. When a state court makes a "reasonable, good-faith interpretatio[n]" of our precedents as they exist at the time of decision, that decision should not be overturned on federal habeas review. *Butler*, 494 U. S., at 413–414. Whatever the merits of the Court of Appeals' constitutional holding, an issue that is not before us, the Illinois courts were not unreasonable in concluding that the error in Taylor's instructions was not constitutional error. The State is not required to allow the defense of sudden and provoked passion at all, and the State is free to allow it while requiring the defendant to prove it. *Martin, supra; Patterson, supra*. It is not a begrudging or unreasonable application of these principles to hold that jury instructions that create a reasonable likelihood the jury will not consider the defense do not violate the Constitution.

Because our cases do not resolve conclusively the question whether it violates due process to give an instruction that is reasonably likely to prevent the jury from considering an affirmative defense, or a hybrid defense such as the State of Illinois permits, resolution of the issue on habeas would require us to promulgate a new rule. Like the Court, I be-

lieve that this rule does not fall within either of *Teague's* exceptions to nonretroactive application of new rules on habeas. The rule does not place any conduct, much less "'primary, private individual conduct[,] beyond the power of the criminal law-making authority to proscribe.'" *Teague,* 489 U. S., at 311 (quoting *Mackey* v. *United States,* 401 U. S. 667, 675 (1971) (Harlan, J., concurring in judgments in part and dissenting in part)). Nor does the rule embody a "procedur[e] without which the likelihood of an accurate conviction is seriously diminished." . 489 U. S., at 313. As noted above, the Constitution does not require the State to provide an affirmative defense to murder; a rule that, once such a defense is provided, the instructions must not prevent the jury from considering it is "a far cry from the kind of absolute prerequisite to fundamental fairness that is implicit in the concept of ordered liberty." *Id.,* at 314 (internal quotation marks omitted).

The rule the Court of Appeals promulgated is not compelled by precedent, nor does it fall within one of the two *Teague* exceptions. I therefore agree with the Court that the Court of Appeals erred in applying that rule in this case. I do not join the Court's opinion, however, because it could be read (wrongly, in my view) as suggesting that the Court of Appeals' decision in this case applied not only a new rule, but also an incorrect one. I would reserve that question until we address it on direct review.

JUSTICE BLACKMUN, with whom JUSTICE STEVENS joins, dissenting.

The Court today holds that it cannot decide whether Kevin Taylor has suffered a denial of due process, because *Teague* v. *Lane,* 489 U. S. 288 (1989), and its progeny preclude the announcement or application of a new rule on federal habeas corpus. The Court further concludes, as it must in order to avoid reaching the merits, that neither exception to *Teague's* proscription of a new rule applies in this case. See *ante,* at

345. The second *Teague* exception permits the retroactive application of " 'watershed rules of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding," *Saffle* v. *Parks*, 494 U. S. 484, 495 (1990) (quoting *Teague*, 489 U. S., at 311). Unlike the Court, I am fully persuaded that this exception does apply in this case. Therefore, even assuming, *arguendo*, that the majority is correct in concluding that Taylor asks this Court to announce a "new rule," *Teague* does not preclude the retroactive application of that rule.

Taylor argues that the substantive criminal law existing at the time of a defendant's alleged offense must be the law that governs the trial of that offense. I believe that he is correct and that the principle he asserts is a fundamental one. I therefore would affirm the judgment of the Court of Appeals.

I

At the time that Taylor was tried for the "murder" of Scott Siniscalchi, Illinois law defined murder and voluntary manslaughter as two distinct crimes, albeit with two elements in common. To be guilty of either crime, a defendant had to have (1) caused the death of the victim, and (2) intended to kill or cause great bodily harm to the victim.[1] The distinction between voluntary manslaughter and murder at the time of Taylor's offense was that a defendant who acted either "under a sudden and intense passion resulting from serious provocation," or under an unreasonable (but honest) belief that deadly force was justified to prevent the defendant's own imminent death or great bodily harm, was guilty of voluntary manslaughter but not guilty of murder. Ill. Rev. Stat., ch. 38, ¶ 9–2 (1985). In other words, under Illinois law at the time of Taylor's offense, a person who killed

---

[1] The intent element would also be satisfied if the defendant knew that his acts would cause or create a strong probability of death or great bodily harm, or if the defendant had been attempting or committing a forcible felony at the time. See Ill. Rev. Stat., ch. 38, ¶¶ 9–1(2) and (3) (1985).

under specific circumstances of provocation was *innocent of murder.*

At the close of Taylor's trial, the presiding judge found that sufficient evidence in support of voluntary manslaughter had been presented to require a jury instruction under Illinois law. The judge therefore determined that he would "let the Jury decide . . . whether that provocation existed here or did not exist here." App. 96. No one has challenged this finding on appeal. Yet the presiding judge did not explain to the jury that provocation was an affirmative defense to murder. Instead, after telling the jury about the two elements of murder (intent and causation of death), the judge stated: "If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the Defendant guilty." *Id.,* at 129. The judge went on to instruct the jury that a person is guilty of voluntary manslaughter when he has killed an individual while possessing the requisite state of mind, and at "the time of the killing he acts under a sudden and intense passion resulting from serious provocatin [sic] by the deceased. Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." *Id.,* at 130. Finally, the judge gave the following instruction in an apparent attempt to explain the relation between the murder and the voluntary manslaughter charges:

> "As stated previously, the Defendant is charged with committing the offense of murder and voluntary manslaughter. If you find the Defendant guilty, you must find him guilty of either offense; but not both. On the other hand, if you find the Defendant not guilty, you can find him not guilty on either or both offenses." *Id.,* at 131.

Even the prosecutor thought these instructions may have failed to inform the jury of the relation between the offenses of murder and manslaughter under Illinois law. *Id.,* at 98–

99. He accordingly suggested that the judge include an instruction explaining that Taylor's provocation claim could serve to constitute a complete defense to the murder charge. *Id.*, at 99. The prosecutor indicated that he had raised this possibility because "I just don't want to knowingly create error here." *Id.*, at 101. The trial judge declined the suggestion and responded to the prosecutor's concern: "We're not doing it knowingly; we're doing it out of ignorance." *Ibid.*

After deliberations, the jury announced that it had found Taylor guilty of murder. It then returned a signed verdict form to that effect. *Id.*, at 131, 137. The jury never mentioned the manslaughter charge and returned unsigned both the guilty and not-guilty forms for that offense. *Id.*, at 139–140.

## II

A jury instruction is unconstitutional if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde* v. *California*, 494 U. S. 370, 380 (1990).[2] I explain in greater detail below why testimony that demonstrates that a defendant killed under provocation is constitutionally relevant evidence in a murder trial in Illinois. A threshold question, however, is whether the jury's instructions in this case created a reasonable likelihood that the jury would not consider such provocation evidence.

No one appears to contest the proposition that a jury of lay people would not understand from the instructions that it should find Taylor not guilty of murder if it concluded that he acted under provocation. The judge explained to the

---

[2] The Court implies, *ante*, at 342, that the *Boyde* standard might be confined to capital cases. The Court's citation of *Estelle* v. *McGuire*, 502 U. S. 62 (1991), however, belies that implication, because *Estelle* v. *McGuire* reaffirmed the *Boyde* standard and was itself not a capital case. See also *ante*, at 348 (O'CONNOR, J., concurring in judgment).

jury that it could convict Taylor of either murder or man-slaughter (or neither), but not both. App. 131. In instruct-ing that Taylor could not be found guilty of both offenses, however, the judge failed to explain that a defendant, in fact, could satisfy the elements of both offenses. He failed to in-form the jury that indeed *whenever* the elements of volun-tary manslaughter (intent, causation, and provocation) are satisfied, the elements of murder (intent and causation) are satisfied as well. And, of course, he therefore did not clarify that the jury must choose manslaughter over murder in the event that the elements of both offenses are made out.

The relation between murder and voluntary manslaughter in Illinois at the time of Taylor's offense was a complicated one. Provocation was both a component of manslaughter and a defense to murder. The easy way to convey this idea is to explain that to find a defendant guilty of murder, the jury must find (1) that there was intent, (2) that there was causation, and (3) that there was no provocation. The prose-cutor explained to the judge that he might have had to pro-vide such an instruction under Illinois law. See *id.*, at 99.

What the judge actually did, however, was simply to list the elements of each offense, starting with murder, tell the jury that it could convict Taylor of only one but not of both, and send the jury to deliberate. In the deliberation room, the jurors had four sheets of paper,[3] each of which provided spaces for the jurors' signatures. The sheets indicated, re-spectively, verdicts of "Not Guilty of the offense of murder," "Guilty of the offense of murder," "Not Guilty of the offense of Voluntary Manslaughter," and "Guilty of the offense of Voluntary Manslaughter," in that order. See *id.*, at 135, 137, 139–140. The jurors signed neither the guilty nor the not-guilty verdict forms regarding voluntary manslaughter. This is almost certainly because the instruction for murder

---

[3] Two additional sheets referred to the crime of home invasion, for which Taylor was tried and convicted. This conviction, however, is no longer at issue in this case.

preceded the instruction for manslaughter, the verdict forms for murder preceded the verdict forms for manslaughter, and the jurors understood that once they had found Taylor guilty of murder, they could not, consistent with the judge's instructions, find him guilty of manslaughter. There was therefore no need, under the instructions they received, to consider manslaughter and provocation. Taylor's jury never knew that provocation made out a complete defense to murder.

The State itself concedes that the instructions "violated state law by permitting the jury to find Taylor guilty of murder without considering his affirmative defense." Brief for Petitioner 12. According to a unanimous Illinois Supreme Court evaluating the same instructions given in another case: "These instructions essentially assure that, if the jury follows them, the jury cannot possibly convict a defendant of voluntary manslaughter." *People* v. *Reddick*, 123 Ill. 2d 184, 194, 526 N. E. 2d 141, 145 (1988). The Seventh Circuit concluded: "No matter how clearly either the State or the defense proved the existence of the mitigating 'manslaughter defenses,' the jury could nevertheless return a murder verdict in line with the murder instruction as given." *Falconer* v. *Lane*, 905 F. 2d 1129, 1136 (1990). Because of the jury's ignorance, respondent Taylor suffered a fundamental deprivation of his constitutional rights that seriously diminished the likelihood of an accurate conviction.

### III

To understand why an instruction that prevents the jury from considering provocation evidence violates the Constitution, it is necessary to examine the operation of the criminal law in regulating the conduct of citizens in a free society. As explained below, the instructions in this case in effect created an *ex post facto* law, diminished the likelihood of an accurate conviction, and deprived Taylor of his right to a fair trial.

## A

### 1

This Court consistently has held that the Constitution requires a State to provide notice to its citizens of what conduct will subject them to criminal penalties and of what those penalties are. See *Miller* v. *Florida*, 482 U. S. 423, 429 (1987) (explaining the constitutional prohibition against *ex post facto* laws, U. S. Const., Art. I, §9, cl. 3, §10, cl. 1); *Beazell* v. *Ohio*, 269 U. S. 167, 169 (1925) (same); *Buckley* v. *Valeo*, 424 U. S. 1, 77 (1976) (explaining the due process requirement that defendants be on notice that their conduct violates the criminal law); *Bouie* v. *City of Columbia*, 378 U. S. 347, 351 (1964) (same). People can conform their conduct to the dictates of the criminal law only if they can know what the criminal law has to say about their conduct. Proper warning is a constitutional imperative.

Illinois, through its criminal statutes, warned Taylor that his actions, as conceded at trial, were against the law. Illinois, however, did not warn him that murder and voluntary manslaughter would be treated as interchangeable or equivalent offenses. A defendant convicted of voluntary manslaughter, for example, could be incarcerated for as short a term as 4 years, and could be imprisoned for a maximum term of 15 years. A convicted murderer, in contrast, could be imprisoned for no fewer than 20 years and up to a maximum of 40 years, absent aggravating factors. See Ill. Rev. Stat., ch. 38, ¶¶ 9–2(c), 1005–8–1(1) and (4) (1985). Under Illinois law at the time of Taylor's acts, then, the offense that he claims he committed—voluntary manslaughter—was not treated as an offense of nearly the same seriousness as murder.[4] Nevertheless, in the presence of provocation evidence,

---

[4] This distinction between murder and voluntary manslaughter is hardly a recent innovation in the criminal law. "[T]he presence or absence of the heat of passion on sudden provocation—has been, almost from the inception of the common law of homicide, the single most important factor

a murder instruction read without an adequate explanation of the affirmative defense of provocation treats murder and voluntary manslaughter as equivalent offenses. Because provocation evidence was undisputedly present in this case, the failure to explain its operation as a defense to murder amounted to the application to Taylor of an *ex post facto* murder law.

A useful analogy to the relation between voluntary manslaughter and murder in this case is the relation between self-defense and murder elsewhere in the criminal law. In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt. See, *e. g., Martin* v. *Ohio,* 480 U. S. 228, 233, 234 (1987). This is because only *elements* of an offense impose this heavy burden of proof upon the State. *Ibid.* Despite its status as an affirmative defense, however, self-defense converts what is otherwise murder into justifiable homicide. In other words, the person who kills in self-defense, instead of being guilty of murder, is guilty of no offense at all.

It is easy to see in the context of self-defense how the omission of an affirmative-defense instruction fundamentally denies the defendant due process. Consider the following hypothetical example. As a citizen who is presumed to know the law, see *Atkins* v. *Parker,* 472 U. S. 115, 130 (1985), Jane Doe chooses to kill John Smith when he threatens her with substantial bodily harm or death, on the correct theory that she is not committing murder under state law. Doe has a right to rely on the representation of her state legislature that her conduct is legal. If the State then were to try her for murder and not permit her to plead self-defense, the State's breach of this representation undoubtedly would violate principles of fundamental fairness.

---

in determining the degree of culpability attaching to an unlawful homicide." *Mullaney* v. *Wilbur,* 421 U. S. 684, 696 (1975).

It may be more difficult to sympathize with Kevin Taylor than with the hypothetical Jane Doe, because Doe acted legally and Taylor concededly did not. Not all crimes are equal, however, and if Illinois announces that it will treat murder more seriously than voluntary manslaughter, then Taylor has a right to rely on that announcement when he makes a decision to engage in conduct punishable as a less serious crime. This Court in *Mullaney* v. *Wilbur*, 421 U. S. 684, 698 (1975), said:

> "Indeed, when viewed in terms of the potential difference in restrictions of personal liberty attendant to each conviction, the distinction . . . between murder and manslaughter may be of greater importance than the difference between guilt or innocence for many lesser crimes."

## 2

By equating voluntary manslaughter with murder and thereby, in effect, applying an *ex post facto* murder law to Taylor, the instructions in this case made it highly likely that the jury would return an inaccurate murder conviction.

As explained above, under Illinois law at the time of Taylor's offense, the presence of provocation reduced murder to voluntary manslaughter. This meant that state law defined the category of murder to exclude voluntary manslaughter and therefore considered a person who was guilty of voluntary manslaughter also to be innocent of murder. Any procedure that increased the likelihood of a murder conviction despite the presence of provocation, thus also decreasing the likelihood of a manslaughter conviction, was therefore a procedure that diminished the likelihood of an accurate conviction by the jury. Because the procedure in this case prevented the jury from even *considering* the voluntary manslaughter option, it severely diminished the likelihood of an accurate conviction. See *Butler* v. *McKellar*, 494 U. S. 407, 416 (1990). The instructions given in this case essen-

tially ensured that a person guilty of voluntary manslaughter would be convicted, wrongly, of murder.

Returning to the hypothetical example set forth above, the omission of a self-defense instruction in Jane Doe's case would distort the definition of murder by causing the jury to include killings in self-defense within that definition. A person who kills in self-defense, however, like a person who kills under provocation, is not guilty of murder under state law and is therefore not subject to the penalties prescribed for murder. Any conviction that results from the omission of a state-law affirmative defense is therefore, in the case of provocation and in the case of self-defense, an inaccurate conviction.

The State suggests that the right asserted by Taylor is the same as that recognized by this Court in *Beck* v. *Alabama*, 447 U. S. 625 (1980). See Brief for Petitioner 17. In *Beck*, this Court held that a capital defendant is entitled to a lesser included offense instruction if there is evidence in the record to support such an instruction. We left open the question whether *Beck* applies in the noncapital context. 447 U. S., at 638, n. 14. The State here asserts that because many Courts of Appeals have rejected such a right in the noncapital context, this Court could do the same with respect to Taylor's claim. See Brief for Petitioner 17, and n. 7. This assertion is without merit.

Like the right Taylor claims, *Beck* entitles certain defendants to have the jury consider less drastic alternatives to murder. This, however, is where the similarity between the two rights ends. In *Beck*, the Court's concern and the reason for the required lesser included offense instruction was that jurors might ignore their reasonable-doubt instruction. Where the defendant is "'plainly guilty of *some* offense,'" 447 U. S., at 634, quoting *Keeble* v. *United States*, 412 U. S. 205, 213 (1973) (emphasis in original), there is a risk that absent a lesser included offense instruction, the jurors will convict a defendant of capital murder, thereby exposing him

to the death penalty, because they do not want to set a guilty person free. In other words, the failure to provide a lesser included offense instruction in the capital context is a problem only to the extent that we fear that jurors will choose to disregard or nullify their reasonable-doubt instruction.

In Taylor's case, the concern is just the opposite—that the jurors *will* follow their instructions and thereby convict the defendant of murder because they are ignorant of the fact that provocation reduces the offense to voluntary manslaughter. The failure to include a proper voluntary manslaughter instruction literally distorts the definition of murder by extending it to include voluntary manslaughter and thereby misinforming the jury.

Whether or not we would choose to extend *Beck* and its presumption of jury nullification to the noncapital defendant has no bearing on the outcome of this case. The right at issue here is one premised upon the notion that jurors faithfully follow what they understand to be their instructions. This premise clearly operates in the capital and noncapital contexts alike. See *Richardson* v. *Marsh,* 481 U. S. 200, 211 (1987).

B

Through his instructions, then, the trial judge in this case applied an *ex post facto* murder law to Taylor and thereby misled the jury as to the definition of murder. But the trial judge also violated another of Taylor's constitutional rights. When the judge prevented Taylor's jurors from considering his provocation defense, the judge deprived Taylor of his Sixth Amendment and Fourteenth Amendment right to a fair trial.

The Fifth and Fourteenth Amendments to the Constitution guarantee every criminal defendant the right to remain silent. Our precedents have explained that this right precludes the State from calling the defendant as a witness for the prosecution. See, *e. g., South Dakota* v. *Neville,* 459 U. S. 553, 563 (1983) (the "classic Fifth Amendment viola-

tion" consists of requiring the defendant to testify at his own criminal trial); *Malloy* v. *Hogan*, 378 U. S. 1 (1964) (the Fourteenth Amendment Due Process Clause incorporates the Fifth Amendment right to remain silent against the States). The State must provide all evidence necessary to a conviction if the defendant chooses not to testify.

Taylor gave up this important right and took the witness stand to testify about his crime. He evidently did so to avail himself of the provocation defense provided by Illinois law. Taylor admitted under oath that he broke into his former wife's home and intentionally and fatally stabbed Scott Siniscalchi. App. 80–81. He also testified, however, that he had been provoked by the victim. *Id.*, at 76–81. In its closing argument, the defense therefore asked the jury to find that he had acted under sudden and intense passion when he killed Siniscalchi and therefore was not guilty of murder. *Id.*, at 112–121.

When the judge instructed the jurors, he effectively told them to disregard Taylor's provocation testimony. Absent that testimony, of course, the most important evidence before the jurors when they deliberated was that Taylor had taken the stand and had sworn to them that his actions violated both elements of the murder statute. As far as the jurors could tell, Taylor had confessed to the crime of murder in open court.

Taylor never indicated a desire to plead guilty to murder. Indeed, he offered testimony that tended to show that he was *innocent* of murder. Yet the trial judge failed to follow the very statute that had prompted Taylor to testify. By so doing, the judge effectively transformed exculpatory testimony into a plea of guilty to murder. When a defendant intentionally pleads guilty to an offense, he has a constitutional right to be informed about the consequences of his plea. See *Mabry* v. *Johnson*, 467 U. S. 504, 509 (1984); *Marshall* v. *Lonberger*, 459 U. S. 422, 436 (1983). Taylor, however, was never apprised of the consequences of his testi-

mony. Instead, he was affirmatively misled into unknowingly confessing to a crime of which he claimed he was innocent. The judge's erroneous instructions thereby vitiated Taylor's right to a fair trial, guaranteed him by the Sixth and Fourteenth Amendments.

## IV

The omission of an adequate affirmative-defense instruction constitutes a profound violation of a defendant's constitutional rights. It creates an *ex post facto* law, misinforms the jury as to the governing legal principles, and denies a defendant his right to a fair trial. "Although the precise contours of [the second *Teague*] exception may be difficult to discern, we have usually cited *Gideon* v. *Wainwright*, 372 U. S. 335 (1963), holding that a defendant has the right to be represented by counsel in all criminal trials for serious offenses, to illustrate the type of rule coming within the exception." *Saffle* v. *Parks*, 494 U. S., at 495. The right to an affirmative-defense instruction that jurors can understand when there is evidence to support an affirmative defense is as significant to the fairness and accuracy of a criminal proceeding as is the right to counsel. It is indeed critical in a case like this one, where the defendant takes the stand and concedes the elements of murder in order to prove his affirmative defense.

Kevin Taylor has not requested a rule that would unreasonably place stumbling blocks in the path of law enforcement, nor has he asked this Court to announce a rule that is only marginally related to the underlying right to a fair trial. On the contrary, he has asked that he be convicted of voluntary manslaughter if he is guilty of voluntary manslaughter, that he be spared a sentence for murder if he is innocent of murder, and that his judge not effectively instruct the jury to disregard the exculpatory part of his testimony and attend

only to that which would ensure a conviction for murder. If he is denied what he asks, he is denied a fair trial.[5]

I respectfully dissent and would affirm the judgment of the Court of Appeals.

---

[5] The Court's footnote 4, *ante,* at 345, added by THE CHIEF JUSTICE after the dissenting opinion circulated, hardly deserves acknowledgment, let alone comment. I had thought that this was a court of justice and that a criminal defendant in this country could expect to receive a genuine analysis of the constitutional issues in his case rather than the dismissive and conclusory rhetoric with which Kevin Taylor is here treated. I adhere to my derided "constitutional stew."