In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2660

DAVID G. HUUSKO,

*Petitioner-Appellant*,

*v.*

LARRY JENKINS, Warden,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-C-0059-C—**Barbara B. Crabb**, *Chief Judge*.

ARGUED SEPTEMBER 11, 2008—DECIDED FEBRUARY 18, 2009

Before EASTERBROOK, *Chief Judge*, and POSNER and
EVANS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. David Huusko was con-
victed in Wisconsin of armed robbery. Shea Mattice
testified that, when he and his buddy Huusko needed
money to buy drugs, they robbed convenience stores.
The particular robbery in question occurred on May 17,
2000. Mattice testified that he waited in a car while
Huusko went inside to loot the till. A video tape shows
the events in the store. The cashier identified Huusko as

the robber. Jacob Sieg and his wife Lisa Sieg, who knew both Huusko and Mattice, identified Huusko as the robber, relying on the face, hair, and clothing of the person in the video. The Siegs earlier had identified Mattice as the robber—and Huusko's defense was that Mattice had done the deed—but explained at trial that they were initially trying to protect Huusko and now were telling the truth. The jury, which saw the video, concluded that Huusko had committed the crime and convicted him.

This federal collateral attack arises from post-verdict events. Wisconsin combines some aspects of direct and collateral review by allowing post-judgment, but pre-appeal, motions to raise matters outside the trial record. After Huusko filed a motion under Wis. Stat. §974.02 contesting the performance of his trial counsel, the state court appointed Jay Heit to represent him. Heit presented a good deal of evidence and argument at the post-conviction hearing, but the trial judge concluded that Huusko's original lawyer had furnished effective assistance. The state's court of appeals affirmed.

Later Huusko filed a motion under Wis. Stat. §974.06, the state's principal form of collateral review. Represented by a third lawyer, Huusko argued (among other things) that Heit had furnished ineffective assistance at the §974.02 hearing by not calling Jacob Sieg as a witness and exploring whether Sieg had changed his testimony to reduce the risk of having his probation revoked. Sieg, who was on probation following a conviction for burglary, roomed with Mattice part of the time—and, as

Mattice was wanted on several warrants, this association violated the terms of Sieg's probation. Perhaps, Huusko's third lawyer suggested, Sieg had changed his tune in order to keep on the good side of the probation office. Huusko contended that Heit should have explored this question as part of his challenge to the work of his first lawyer, but had failed to do so because of a conflict of interest: Heit had been Sieg's lawyer in the prosecution that ended in the burglary conviction. Because of this conflict Heit's service had been ineffective, Huusko argued. The trial judge and the state's court of appeals both disagreed with this contention, *Wisconsin v. Huusko*, 2006 WI App 223, 296 Wis. 2d 935, 724 N.W.2d 273 (2006), as did the federal district court. *Huusko v. Endicott*, 2007 U.S. Dist. LEXIS 37040, 2007 U.S. Dist. LEXIS 51755 (W.D. Wis. 2007).

Logically the first issue on this appeal is whether a challenge to Heit's performance is within the scope of federal collateral review. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. §2254(i). The proceeding under Wis. Stat. §974.02 was "post-conviction", but was it "collateral"? The parties did not address this question in the district court or their appellate briefs, and although we are entitled to overlook the state's forfeiture of a procedural defense on collateral review, see *Day v. McDonough*, 547 U.S. 198 (2006), this is not an appropriate occasion to use that power. Section 974.02 sets up a procedure that is neither fish nor fowl, and it is best to wait for an adversarial

presentation, in a case where the answer matters, before addressing whether §2254(i) applies.

Wisconsin itself calls all forms of collateral review "part of the original criminal action" (§974.06(2)), although for federal purposes the post-appeal proceeding under §974.06 is "collateral." Federal law classifies a state proceeding for the purpose of §2254; a state cannot make all collateral review "direct," and thus reset the time limits and other provisions of §2254, by mere say-so. See *Teas v. Endicott*, 494 F.3d 580 (7th Cir. 2007).

Normally a hearing held to inquire into the effectiveness of trial counsel would be a collateral proceeding in federal court, see *Massaro v. United States*, 538 U.S. 500 (2003), but it is not unheard of for a district court to conduct such an inquiry before resolving a motion for a new trial under Fed. R. Crim. P. 33, a step that is part of direct rather than collateral review in federal practice. See *Kitchen v. United States*, 227 F.3d 1014 (7th Cir. 2000). Matters that precede the direct appeal may not be "collateral" for federal purposes, even though they present issues normally entertained on collateral attack—but if a §974.02 proceeding is deemed non-collateral, then Wisconsin's prisoners will enjoy a right to effective assistance of counsel in pursuing ineffective-assistance contentions, even though prisoners in Indiana, Illinois, and most other states do not enjoy such a right. A desire for consistent rules in federal constitutional adjudication supports calling a §974.02 proceeding "collateral." So classification may be difficult, and as it does not matter today the subject may be postponed—though we hope

that, next time, counsel will address rather than over-look the significance of the direct/collateral distinction under §2254(i).

The reason §2254(i) does not matter today is that Heit did not have a conflict of interest. Huusko starts with the assumption that a lawyer owes a duty to a former client. He uses this duty to establish the conflict, and then he invokes *Cuyler v. Sullivan*, 446 U.S. 335 (1980), for the proposition that collateral relief is automatic, without regard to prejudice, when trial counsel labors under a conflict that has been concealed from the judge and the accused. (Heit was *not* trial counsel, but we won't mention that detail again.) Huusko's obstacle is this holding of the state's appellate court in the §974.06 proceeding:

> Finally, Huusko argues that Heit had a conflict of interest that prevented him from calling Sieg as a witness at his initial postconviction hearing. Heit represented Sieg in the proceedings that led to Sieg being placed on probation. At the post-conviction hearing, Heit testified that under the terms of the state public defender assignment, his representation of Sieg ended when Sieg was sentenced. Heit testified that he had no obligation to protect Sieg from the consequences of any proba-tion violation. While he had a continuing obliga-tion to maintain confidentiality, he had no privi-leged or confidential information that might have affected Huusko's case. Heit's failure to inquire about Sieg's alleged probation violations was based on his judgment that the violations

> were not relevant to Huusko's case rather than out
> of any continuing duty to Sieg. Huusko has not
> established any actual conflict of interest.

2006 WI App 223 at ¶12. Huusko maintains that the state court's decision is an unreasonable application of federal law, the standard for relief under 28 U.S.C. §2254(d). But we do not read it as *any* application of federal law; the court determined that Heit did not owe a continuing duty to Sieg.

What duties lawyers owe their former clients depends on the law of the jurisdiction where the representation occurred. When representing a client in Wisconsin, a lawyer must follow Wisconsin's rule. When representing a client in federal court, a lawyer must follow federal rules. Most federal courts use the ethical rules of the states in which they sit, though a few (the Northern District of Illinois being a good example) have elaborate federal rules of practice. Things might get complex if Heit had defended Sieg in Wisconsin, and the second prosecution (where Sieg was a witness) had been in federal court; then two sets of ethical rules could have come into play, with a potential for inconsistency. But both the prosecution in which Heit represented Sieg, and the post-conviction proceedings in Huusko's case, were in Wisconsin's state courts, so Heit's duties depended entirely on Wisconsin law.

Wisconsin believes—as the decision on post-conviction review in Huusko's case shows—that lawyers must maintain a former client's confidences but do not have a duty to protect a former client's current legal interests.

This means that Heit ethically could have called Sieg to the stand in the §974.02 proceeding and asked questions that would have exposed Sieg to a risk that his probation would be revoked.

Huusko's latest lawyers do not disagree with this understanding of Wisconsin law so much as they ignore it. They do not cite any provision of the code of conduct governing practice in Wisconsin or any judicial decision interpreting those requirements. They cite many decisions of federal appellate courts in cases that may or may not be analogous. But they do not cite a single state decision (in Wisconsin or any other state with the same or similar rules of conduct) or try to show that Wisconsin's appellate judiciary misunderstood attorneys' ethical duties under Wisconsin law. Not that it would have done counsel any good to make such an argument. For a federal court cannot issue a writ of habeas corpus that rests on a belief that a state court has misunderstood or misapplied state law. See, e.g., *Waddington v. Sarausad*, No. 07-772 (U.S. Jan. 21, 2009), slip op. 12 n.5; *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993); *Estelle v. McGuire*, 502 U.S. 62 (1991). Yet without a duty founded in state law, there is no conflict and no constitutional issue.

AFFIRMED