NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 8, 2011[*]
Decided March 11, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-3232

| | |
|---|---|
| BUFORD O'NEAL FURROW, JR., | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Indiana, |
| | Terre Haute Division. |
| *v.* | |
| | No. 2:10-cv-190-WTL-DML |
| HELEN J. MARBERRY, et al., | |
| *Defendants-Appellees.* | William T. Lawrence, |
| | *Judge.* |

**O R D E R**

Buford Furrow shot and wounded an adult and four children at a Jewish community center in California in 1999, and then murdered a postal worker after he fled the scene. He was prosecuted in federal court and is serving multiple life sentences. *See Ileto v. Glock, Inc.*, 349 F.3d 1191 (9th Cir. 2003). In this action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Furrow claims that his rights under the First,

---

[*]The appellees were not served with process in the district court and are not participating in this appeal. Thus, the appeal is submitted on the appellant's brief and the record. After examining these materials, we have concluded that oral argument is unnecessary. *See* FED. R. APP. P. 34(a)(2)(C).

Fifth, and Eighth Amendments were violated because of restrictive housing assignments at the federal penitentiary in Terre Haute, Indiana. The district court dismissed the complaint at screening for failure to state a claim. *See* 28 U.S.C. § 1915A.  Furrow appeals, and we affirm the judgment.

Furrow's complaint was dismissed at the pleading stage, so for purposes here we accept his allegations as true and draw all inferences in his favor. *See INEOS Polymers Inc. v. BASF Catalysts*, 553 F.3d 491, 497 (7th Cir. 2009). In September 2006, Furrow was transferred from the general population at the federal penitentiary in Marion, Illinois, to an area within the Special Confinement Unit at Terre Haute designated for high-security inmates. According to Furrow, inmates in the Special Confinement Unit are isolated, eat alone in their cells, are limited to five hours of recreation weekly, are not allowed contact visits, and face restricted access to prison programs and privileges including telephone use, commissary purchases, and library time. Furrow remained in that unit until April 2010, when he was transferred to the Special Housing Unit and assigned to administrative segregation. Immediately before this move to less-restrictive quarters, Furrow appeared before several staff members and was told that he was going to administrative detention. Two correctional lieutenants then issued an administrative detention order. *See* U.S. Dep't of Justice, Fed. Bureau of Prisons, Program Statement 5270.08, ch. 9, pp. 9, 11-12 (Dec. 4, 2009).

Three months after that transfer, Furrow initiated this lawsuit against the warden and several members of her staff. He requested damages and prospective relief, but the latter demand appears to be moot because BOP records currently show that Furrow is confined in a different prison. *See Lehn v. Holmes*, 364 F.3d 862, 871-72 (7th Cir. 2004); *Fuller v. Dillon*, 236 F.3d 876, 882-83 (7th Cir. 2001). Furrow claims that the defendants (1) moved him first to the Special Confinement Unit and then to the Special Housing Unit without a hearing, in violation of his Fifth Amendment right to procedural due process; (2) failed to administer a psychiatric evaluation before each transfer, thus displaying deliberate indifference to a preexisting mental-health condition; and (3) assigned him to the Special Housing Unit specifically to retaliate for the exercise of his First Amendment rights. In dismissing these claims at screening, the district court reasoned that Furrow does not have a liberty interest in being housed in the general population and thus it was unnecessary for prison officials to conduct a hearing before moving him. The court also concluded that Furrow's complaint fails to state a First Amendment retaliation claim because he does not link the housing assignment to any protected activity and thus raises no plausible inference of retaliation. But the district court misread the Eighth Amendment claim and, thinking that Furrow was challenging his housing conditions rather than the lack of pre-transfer psychiatric evaluations, reasoned that the claim is frivolous because the living conditions Furrow describes do not fall below the constitutional threshold. On appeal Furrow

challenges the dismissal of all three claims, though his arguments about the First and Eighth Amendments are easily dispatched.

Furrow's retaliation claim fails because, as the district court noted, his complaint does not raise a plausible link between protected activity and his reassignment from the high-security Special Confinement Unit to less-restrictive administrative detention in the Special Housing Unit. *See McElroy v. Lopac*, 403 F.3d 855, 858 (7th Cir. 2005); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005). Furrow does not allege that his transfer was motivated by a particular grievance or lawsuit—or any other exercise of his First Amendment rights—and his appellate brief reveals that this claim rests entirely on supposition that the move was retaliatory because he was not assigned to the general population. But speculation won't do, even under notice pleading. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

The Eighth Amendment claim is even thinner. To state a claim for deliberate indifference to a medical condition, an inmate must allege that he suffers from an objectively serious affliction that the defendants knew about yet failed to take reasonable measures to address. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010). But Furrow's complaint does not allege that his housing assignments aggravated his mental illness or that the defendants had reason to believe that the placements would have that effect. Indeed, in this court Furrow concedes that "incarceration has proved helpful" to his mental health. His theory is that the defendants ignored a BOP regulation which, according to Furrow, requires psychological screening before placement in restrictive confinement. That reading is doubtful, *see* 28 C.F.R. 541.22, but even if Furrow is correct about the command of the regulation and the defendants' noncompliance, a failure to comply with a prison regulation or policy does not by itself raise a constitutional issue. *Samford v. Dretke*, 562 F.3d 674, 681-82 (5th Cir. 2009); *Whitman v. Nesie*, 368 F.3d 931, 935 n.1 (7th Cir. 2004).

Furrow's due process claim might seem more plausible, since we recently observed that placement in segregated confinement for substantial periods under exceptionally harsh conditions might rise to the level of an "atypical and significant hardship" and thus implicate the Due Process Clause. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). But it's unnecessary for us to speculate whether Furrow's housing assignments could have met this high threshold, since two insurmountable obstacles doom his theory that procedural safeguards were necessary before he was moved into the Special Confinement Unit or the Special Housing Unit. *See Wilkinson v. Austin*, 545 U.S. 209 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). The first hurdle for Furrow is that he was assigned to the Special Confinement Unit at Terre Haute in 2006, almost four years before he sued. Thus, any contention that his right to due process was violated by moving him without a

hearing is barred by the two-year statute of limitations governing *Bivens* claims arising in Indiana. *See Jackson v. Kotter*, 541 F.3d 688, 699 (7th Cir. 2008); *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 913 (7th Cir. 2000). That bar limits Furrow's claim to his April 2010 reassignment to the Special Housing Unit, which occurred within the statute of limitations. Yet that move left Furrow better off, not worse, since even he acknowledges that the conditions in the Special Confinement Unit were more restrictive. And for that reason no hearing was necessary; as we explained in *Lagerstrom v. Kingston*, "the liberty interest recognized in *Wilkinson* is derived from the drastic change in the conditions of confinement," and that degree of change is likely to be absent if "the inmate is already confined to segregation." 463 F.3d 621, 623 (7th Cir. 2006); *see Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (noting that *Sandin* recognizes potential for liberty interest "in avoiding placement in *more restrictive* conditions"). So it was here: Furrow already was housed under restrictive conditions, and no further process was necessary before *easing* those conditions by moving him to another area of the prison.

AFFIRMED.