NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 29, 2013[*]
Decided August 29, 2013

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1810

| | |
|---|---|
| MANNIE MADDOX,<br>    *Plaintiff–Appellant,* | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 12-CV-2033 |
| WEXFORD HEALTH SOURCES, INC., et al.,<br>    *Defendants–Appellees.* | Michael P. McCuskey,<br>*Judge.* |

**O R D E R**

Mannie Maddox, an inmate at Danville Correctional Center in Illinois, appeals the denial of his request for a preliminary injunction ordering Wexford Health Sources

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

and Department of Corrections employees to arrange immediate surgery for his cataracts. Because Maddox did not establish entitlement to immediate relief, we uphold the district court's decision.

In his suit under 42 U.S.C. § 1983, Maddox claims that Wexford (the provider of medical care for adult inmates in Illinois) and personnel at Danville have been deliberately indifferent to his impaired vision (his other claims were dismissed at screening). Maddox alleges that he frequently sought "treatment for his poor and severely blurred vision in his right eye." His medical records, says Maddox, document repeated promises of cataract surgery, but no surgery had been performed before he filed his complaint in February 2012. As a result, according to the complaint, Maddox has lost all vision in his right eye and partial vision in the left, and also suffers from severe headaches and dizziness. He seeks, among other relief, a preliminary injunction ordering the defendants "to cease in repeatedly delaying, continuing, postponing, and denying the much needed surgery." After this appeal was filed, Maddox did have cataract surgery for his right eye, which, the defendants insist, moots this appeal.

Maddox's demand for immediate surgery was premised entirely on his interpretation of medical records attached to his complaint, but as far as we can tell, this suit was filed before an opthamologist or other specialist had rendered an expert opinion concerning the need for surgery or its urgency. In his complaint Maddox asserts that prison doctors (all of them optometrists) had "scheduled" a "series of cataract surgeries." Maddox believed that without surgery he faced a "substantial risk of total blindness in both eyes," yet this dire prediction, like his assertion that surgery was imperative, lacked backing from a qualified expert.

Maddox's medical records (at least those available to the district court when it ruled on his request for preliminary relief) do not evidence a prescription for surgery. The records disclose that Maddox first was examined in July 2010. The report from that examination describes "poor view" in his right eye. He was diagnosed with anisometropia (unequal refractive power between the eyes that can distort the visual information conveyed to the brain, 8 ROSCOE N. GRAY, M.D. & LOUISE J. GORDY, M.D., LL.B., ATTORNEYS' TEXTBOOK OF MEDICINE ¶ 55.31(4) (3d ed. 2010)), and presbyopia (diminished ability to focus on nearby objects, id. ¶ 55.32(1)), conditions that generally are treated without surgery. He was scheduled for a two-month follow-up, which occurred in September 2010. A report documenting that visit notes a history of cataracts but does not recommend surgery or any specific treatment. When Maddox next was examined in January 2011, the optometrist again described the "poor view" in his right

eye but simply recommended a follow-up examination in six months to check for a cataract. The progress report from that follow-up in July 2011 refers back to the January exam, repeats the assessment of "poor view" in his right eye, and notes that Maddox's vision was growing worse. But the examining optometrist concluded that a referral for cataract surgery was not yet appropriate and scheduled another follow-up. Maddox was seen by a different optometrist in October 2011, and that doctor noted cataracts in both eyes, with "greater" severity in the right eye (oculus dexter, or "OD") than the left (oculus sinister, or "OS"). Once more, though, the examiner advised monitoring the condition for another three months and educating Maddox about surgery, not performing it. That visit apparently was the last before Maddox filed his lawsuit.

Maddox sought preliminary relief at the same time he filed his complaint, and the district judge denied that request a month later in a minute order. The court reasoned that Maddox's allegations were inadequate to warrant immediate relief. None of the defendants had yet been served when that ruling was made, but the district court nevertheless authorized Maddox to proceed in forma pauperis with this interlocutory appeal. In granting IFP the court further explained that the medical records Maddox had submitted showed that cataract surgery was not yet recommended.

That was the state of affairs when the district court ruled, but much has changed since then. Five months after he filed this appeal, Maddox asked the district court to appoint counsel to assist with his lawsuit; in that motion he disclosed that surgery had been performed on his right eye, though he also said that the surgery had "done little good for his vision." Additional medical records submitted with that motion document that in May 2012 he was approved for cataract surgery that was performed in July 2012. In his request for counsel, Maddox added that his left eye had "not been treated and it's no telling when and if he'll get required surgery or medication therapy" for that eye.

The defendants have taken the stance that right-eye cataract surgery is the only immediate relief that Maddox demanded, and thus they moved to dismiss this interlocutory appeal as moot. Maddox countered that his motion for preliminary relief sought not only surgery for his right eye but also "relief for his left eye, treatment for his astigmatism, and proper eye glasses." None of these demands, Maddox said, have been met. A motions panel declined to dismiss the appeal and ordered briefing on the merits, though in their briefs the defendants renew their contention that this appeal is moot.

A controversy will become moot if the plaintiff receives the only relief he requested, *Fuller v. Dillon,* 236 F.3d 876, 883 (7th Cir. 2001); *Bd. of Educ. of Oak Park v.*

*Nathan R.*, 199 F.3d 377, 381 (7th Cir. 2000); because the defendants assert that the case is moot, they bear the burden of persuasion, *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167, 189 (2000); *Dorel Juvenile Grp., Inc. v. DiMartinis*, 495 F.3d 500, 503 (7th Cir. 2007). We disagree with the defendants' contention that Maddox sought nothing more than a single surgery on his right eye. His memorandum in support of his motion refers to a "series of cataract surgeries" that had been stalled, putting him at risk of "total blindness in both eyes." His complaint, which Maddox incorporates into his motion, alleges that the failure to provide surgery had compromised the vision in his left eye, as well as caused blindness in the right. And the medical record from his October 2011 examination documents cataracts in *both* eyes. It is true that Maddox's pro se demand for preliminary relief lacks the precision we would expect of counsel, but the reading the defendants give it is too narrow. Moreover, even if Maddox wanted only right-eye surgery, he certainly meant *successful* surgery. Maddox questions the efficacy of the surgery he received, yet the defendants, in asserting mootness, have made no effort to establish that the treatment he received was complete or effective, or even that it was performed in accordance with a treatment plan from a qualified professional.

So the appeal is still live, but that does not mean it has merit. The district court was correct in dispatching Maddox's demand for preliminary relief. For one, Maddox made his demand before any defendant had been served with process, and so, as a practical matter, the district court could not have granted it. An injunction, like any "enforcement action," may be entered only against a litigant, that is, a party that has been served and is under the jurisdiction of the district court. *Lake Shore Asset Mgmt., Ltd. v. Commodity Futures Trading Comm'n*, 511 F.3d 762, 767 (7th Cir. 2007); *see also Audio Enters., Inc. v. B & W Loudspeakers*, 957 F.2d 406, 410 (7th Cir. 1992) (vacating preliminary injunction because defendant had not been served).

More importantly, Maddox's demand for surgery cannot be separated from the merits of his lawsuit, and when he sought immediate relief, Maddox was nowhere close to establishing deliberate indifference. To obtain preliminary relief Maddox had to show a probability of success on his claim that the named defendants have been deliberately indifferent to his vision impairments. He also had to establish that without immediate relief he would suffer irreparable injury. *See Stuller, Inc. v. Steak N Shake Enterprises*, 695 F.3d 676, 678 (7th Cir. 2012); *Ezell v. City of Chicago*, 651 F.3d 684, 694 (7th Cir. 2011).

Maddox argues that the district court erred in denying him injunctive relief by overlooking key portions of two of the medical records he attached to his motion. These records, he asserts, document that surgery was scheduled for his cataracts and contradict the court's conclusion that his condition was not ready for a referral to surgery when he filed his motion for preliminary relief.

Maddox misreads the record. None of medical records he submitted to the district court when he asked for preliminary relief suggest that any doctor "scheduled" or even prescribed cataract surgery. The records concern *monitoring* his eye (or eyes) for possible future surgery, and the prison doctors did just that with follow-up visits over the course of one and a half years. Because Maddox did not make a threshold showing that he will succeed on his claim that the defendants were deliberately indifferent to his condition, we need not consider the other factors of the injunction analysis.

AFFIRMED.